IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

U.S. DISTRICT COURT
DISTRICT OF COLORADO

2012 SEP 21  AM 8: 45

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

Civil Action No. 1:12--cv-02069-WYD-WEH

MALIBU MEDIA, LLC Plaintiff,

v.

Does 1-31, Defendants.

---

## MOTION TO DISMISS AND/OR SEVER COMPLAINT AND QUASH THE COMCAST SUBPOENA AGAINST JOHN DOE #11

---

John Doe No.11 ("Defendant") , acting on his own behalf, identified at internet protocol ("IP") address 50.134.140.26 on May 30, 2012 at 16:36 respectfully submits this Motion to Dismiss And/Or Sever Complaint and Quash the Third Party Subpoena served upon Defendant's Internet Service Provider ("ISP"), Comcast on August 9, 2012.

### HISTORY OF COMPLAINT

1. On August 9, 2012, this Court issued an Order permitting Plaintiff to serve a Rule 45 subpoena on each Defendant's internet service provider seeking personally identifying information about each Defendant, including Defendant's name, physical address, telephone number, e-mail address, and media access control ("MAC") address.

2. On August 9, 2012, Defendant's ISP, Comcast was served with a subpoena issued from this Court and served in New Jersey, that demanded Comcast to produce to Plaintiff

1

the personally identifying information regarding Defendant in connection with Plaintiff's claim that Defendant allegedly unlawfully downloaded a film allegedly owned by Plaintiffs ("work").

3.  Comcast provided written notice to Defendant on August 22, 2012 via UPS delivery.

4.  Comcast's August 22, 2012 letter stated that Comcast would provide the requested information to Plaintiff by September 21, 2012. Comcast's letter further advised Defendant that if Defendant had any objections to the subpoena, Defendant needed to file those objections with the Court no later than September 21, 2012.

## REQUEST TO
## MAKE MOTION
## ANONYMOUSLY

The subpoena subject to the Defendant's motion directed at Comcast, however, the defendant's privacy is directly affected by the information that has been requested by the Plaintiff. Based upon review of court documents related to similar actions filed by the plaintiff in other courts and venues, there appears to be an emerging consensus by the Courts that the Plaintiff's primary interest is forcing out of court settlements through the improper use of the personal information of large numbers of John Does attained via third party subpoenas, thereby avoiding critical review of the core merits of their complaint.

The Plaintiff's allegations are based on assumptions and methods that produce the largest possible identification of alleged participants in ad hoc Bit Torrent networks and result in a large number of false identifications.

Because the Plaintiff's assumptions and methods play a central role in the core merits of the Plaintiff's case, many if not all of the core merits of the case can be determined without the release of personal information.

In the current case .the Plaintiff has requested expedited relief before Rule 26 (f) conferral without demonstrating  the actual potential for real incremental damages if the defendants remain anonymous.

The lack of demonstration of real incremental damage by the Plaintiff if the defendants remain anonymous and the ability to determine many if not all of the core merits of the case without the release of personal information must be balanced against the actual real damages that have been suffered by many falsely identified John Does through the previous  actions of the Plaintiff in other cases when the personal information of large numbers of John Does has been released.

I therefore respectively  request that I be allowed to make this motion anonymously.

## BASIS FOR MOTION

I, John Doe No. 11, respectfully move the Court for dismissal or severance of my case and also move to quash the subpoena served on my Internet Service Provider, Comcast Corporation.

In support of this motion I certify that. 1) I did not have , do not have,  and have not used  Bit Torrent software 2.) The IP address identified in the complaint is not a computer as alleged in the Plaintiff's complaint. The IP address identified in the complaint is a wireless router with multiple potential users  including hackers within range of the  router's wireless signal and visitors to the Defendant's home . 3) I was at my place of work on the date and time of the events alleged by the defendant. I do not have remote  access to my home wireless network. I therefore could not have committed the acts alleged by the Plaintiff 4) Personal computers are being subjected to increasingly sophisticated cyber attacks by malware of all types including attacks in which the operation of the target computer is taken

3

over by outside entities  4) The security software provided to the Defendant by Comcast  at the

time of the alleged event was inadequate to protect the Defendant from such cyber attacks  5)

The Plantiff has a long and demonstrated history of spurious litigation including misuse of

personal information gained from previous third party subpoenas.

## SUMMARY OF RELATED CASES

In a recent case involving the plaintiff in Colorado District Court ( Malibu Media, LLC

v Felitti, et all, Civil Action " 12-cv-1522-WJM), the court registered significant concerns

about similar  litigation previously initiated by the plaintiff:

> the Court is troubled by many aspects of this "swarm joinder" model for copyright litigation.
> Courts across the country have observed that Plaintiff (and other companiesinvolved in this type
> of litigation) do not seem interested in actually litigating their copyright claims. Rather, they
> appear to be using the federal courts only to obtain identifying information for the ISP owners
> and then attempting to negotiate a quick settlement. *See, e.g., Raw Films,* 2011 WL
> 6180205, ("This course of conduct indicates that plaintiffs have used the offices of the Court as
> an inexpensive means to gain the Doe defendants' personal information and coerce payment from
> them. The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply
> have used the Court and its subpoena powers to obtain sufficient information to shake down the
> John Does."). In finding joinder improper in a similar action, one court observed:

> The  federal  courts  are   not   cogs in plaintiff's copyright-enforcement business
> model. The Court will not idly watch what is essentially an extortion scheme, for a case
> that plaintiff has no intention of bringing to trial. By requiring Malibu to file separate
> lawsuits  for  each  of  the Doe Defendants, Malibu will have to expend additional
> resources to obtain a nuisance-value settlement—making this type of litigation less
> profitable. If Malibu desires to vindicate its copyright rights, it must do it the old-
> fashioned way and earn it.

> *Malibu Media, LLC v. John Does 1–10,* Case No. 2:12– cv–3623–ODW (C.D. Cal. June 27,
> 2012). "Our federal court system provides litigants with some of the finest tools available to
> assist in resolving disputes; the courts should not, however, permit those tools to be used as a
> bludgeon." *In re BitTorrent Adult Film Copyright Litigation,* 2012 WL1570765, *10 (E.D.N.Y.
> May 1, 2012). The Court fully agrees with the concerns expressed by these other judges

Many Federal Courts have expressed similar skepticism toward the "mass litigation as business" model followed by the plaintiff including this quote from the Chief Justice of the U.S. District Court for the District of Nevada about similar Plaintiff's "attempt to create a cottage industry of filing copyright claims, making large claims for damages and then settling claims for pennies on the dollar." *Righthaven. L.L.C. v. Democratic Underground,* No. 2:11-cv-01356 (D. Nev. Apr. 14, 2011), Dkt 94. Other Courts have been less generous, questioning "Plaintiffs who file cases with extremely weak infringement positions in order to settle for less than the cost of defense and have no intention of taking a case to trial. Such a practice is an abuse of the judicial system and threatens the integrity of and respect for the courts." Mem. Op. and Order at 5, Raylon, L.L.C. v. E.Z. Tag Corp., No. 6:09-cv-00357 (E.D. Tex. Mar. 9, 2011), Dkt. 115.

In direct reference to Plaintiffs business model and questionable claims of copyright infringement, Judge Beeler of the U.S. District Court for the Northern District of California, found in regards to Plaintiff Patrick Collins Inc. in a similar Bit Torrent copyright litigation case involving one-hundred-eighty-eight (188) John Doe Defendants and an order to show cause:

> [t]he Court has no confidence that Plaintiff has been diligent in moving to name and serve Defendants, despite its (unsworn) claims to the contrary. For example, Plaintiffs counsel states that he has filed ten other copyright cases involving a large number of Doe Defendants. ECF No. 17 at 4. The court reviewed the dockets and noted that the Plaintiffs in these cases have not filed proof of service for even a single Defendant even though a number of Defendants have been identified and dismissed after settling with the Plaintiffs. See, e.g., Media Products, Inc. DBA Devil's Film v. Does 1-1257, Case No. cv 10-04471 RS (complaint filed on October 4, 2010 and no proof of service filed for any Defendant as of July 29,2011, but tour Doe Defendants have been dismissed after settling). This pattern holds true in this case too. Here,

5

Plaintiff has not identified or served any of the 1,219 Doe Defendants. However, on May 10, 2011, Plaintiff filed a stipulation dismissing with prejudice a Doe Defendant who settled with Plaintiti. ECF No. 13 at 1. And, ori August 18, 2011, Plaintiff filed a stipulation dismissing with prejudice more than thirty Doe Defendants who settled. ECF No. at 1-2. The plaintiffs in these cases appear content to force settlements without incurring any of the burdens involved in proving their cases. And, while the courts favor settlements, "filing one mass action in order to identify hundreds of Doe Defendants through pre- service discovery and facilitate mass settlement, is not what the joinder rules were established for." 10 Group, Inc. v. Does 1-435, No. C 10-4382 SI, 2011 WL 445043, at*6 (N.D. Cal. Feb. 3, 2011).Order Dismiss Comp. *Patrick Collins. Inc. v. Does 1-1,219,* Case 4:10-cv-004468-LB  Dkt. No.27 (D. Cal. 2011) Aug. 29, 2011.

Based on the large number of analogous cases, treated in the same or similar manner by Plaintiffs, it appears that such mass copyright litigation lawsuits are a means "to identify hundreds of Doe Defendants through pre-service discovery then, regardless of any consideration of guilt or innocence seek to coerce largely contingent-fee settlements, sometime through harassing letters and direct phone calls with no real intent to actually litigate such claims. This for-profit business model becomes more obvious when one considers the actual 'number of Defendants claimed in such action versus the astonishingly low number of actions actually commenced.

Plaintiff again seeks to take advantage of the threat of an award of statutory damages, attorneys' fees, ignorance about copyright law, and the stigma associated with accessing pornography via the internet to extract quick and profitable settlements. This Court has specifically and directly condemned for-profit copyright litigation models against individuals. *Righthaven, L.L.C. v. Hill,* No. 1:11-cv-00211 (D. Colo. Apr. 7, 2011)(J. Kane), Dkt. 16 ("Plaintiff's wishes to the contrary, the courts are not merely tools for encouraging and exacting settlements from Defendants cowed by the potential costs of litigation and

liability.")  Although Plaintiff does not rely on the same business model as the Righthaven model, Plaintiff does seek to exact settlements from numerous Defendants sued in a John Doe capacity in an amount to which mounting a defense in Court is less economically efficient than settling out of court.

In light of these prior precedents and the well documented previous actions of the plaintiff in similar complaints, t h e Defendant requests that the Court quash Plaintiff's subpoena and dismiss John Doe #11 from this lawsuit.

The odd joinder of the John Doe defendants in this case, spanning a time period of nearly two months along with the many nearly identical cases now pending before the Court could result in excess of several million dollars based solely on questionable allegations of what can only be described at best as *de minimis* acts. The need to cautiously evaluate the various substantive and procedural safeguards is paramount.

Unfortunately, as has been demonstrated in similar actions around the country, some Plaintiffs in mass-copyright infringement lawsuits have at times failed to regard substantive and procedural safeguards implemented as Federal law to protect potential Defendants. The present case is no different because Plaintiff has misjoined all thirty-one (31) Defendants to avoid the cost of appropriately filing individual cases against each John Doe Defendant.

The plaintiffs subpoena is also invalid on its face. The technology and methods utilized to identify potential Defendants are highly unreliable, leading to a significant risk of misidentification. The technology used by Plaintiffs fails to consider important factors such as persons masking false Internet Protocol ("IP") addresses, persons with hacked or open wireless networks, or computers that have been hacked by others and able to be controlled

remotely. Rather, Plaintiffs technology involves use and monitoring of the Bit Torrent network to identify and collect United States IP addresses whom are allegedly downloading the content and sending those IP addresses to be added to a John Doe lawsuit for copyright infringement. Accordingly, the present subpoena must be quashed to avoid considerable injustice.

## LEGAL STANDARDS

### 1. AUTHORITY TO QUASH SUBPOENAS

Pursuant to Rule 45(c)(3), a Court must modify or quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies, or subjects a person to an undue burden." A court may modify or quash a subpoena that, inter alia, requires disclosing confidential information.

Moreover, Fed. R. Civ. Pro Rule 26(c)(1), instructs the Court to limit the frequency or extent of discovery otherwise allowed by the Rules, or by local rule, if it determines that. .. "the burden or expense of the proposed discovery outweighs the likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues."

### 2. STANDING

A party has standing to challenge a subpoena issued to a third party when the party has a personal or proprietary interest in the information sought by the subpoena. See *Washington v. Thurgood Marshall Acad.,* 230 F.R.D. 18,21 (Dist. D.C., 2005).

## ARGUMENT

I.  **PLAINTIFF'S SUBPOENA SHOULD BE QUASHED BECAUSE JOINDER OF DEFENDANTS IS IMPROPER**

A.  **Plaintiff Fails to Show that Claims Arise out of the Same Transaction, Occurrence, or Series of Transactions or Occurrences as Required by Federal R. Civ. Pro. 20(a) for Joinder**

Defendant must be severed and dismissed from the present Complaint because joinder is improper under Rule 20(a) of the Fed. Rules of Civil Procedure. The claims against Defendant (and those asserted against other Doe Defendants) qualify as a unique case, and are inappropriate to join because each Doe has separate network configurations, different alleged access times, separate hardware, and different ISPs, which require individual investigation and gives rise to separate and individual defenses.

Specifically, Plaintiff has failed to meet requisite elements of joinder under Fed. R. Civ. Pro. Rule 20(a). First, in Plaintiffs Complaint, Plaintiff erroneously claims that each Defendant is jointly and severally liable for the infringing activities of other Defendants without citing authority, the infringing complained of was party of a series of transactions, and was accomplished by Defendants acting in concert with one another. The claim that joinder is proper based on Bit Torrent or other peer-to-peer ("P2P") protocols has been reviewed and almost universally rejected by Federal Courts.

*LaFace Records, L.L.C. v. Does 1-38,* 2008 U.S. Dist.LEXIS 14544, 2008 WL 544992 rejected Plaintiff's argument that copyright infringement claims did not arise out of the same transaction, occurrence, or series of transactions…because each Defendant used the same ISP as well as the same P2P networks); *see also Interscope Records v. Does 1-25,* 2004 U.S. Dist.

LEXIS 27782, at 2 (holding improper joinder although Defendants were alleged to have disseminated the Plaintiffs copyrighted works through the same P2P network); *Elektra Entertainment Group. Inc. v. Does 1-9,* 2004 U.S. Dist. LEXIS 23560,2004 WL 2095581,(finding the mere use of the same P2P protocol was insufficient to establish the Plaintiff's copyright infringement claims were logically related for purposes of Rule 20(a)(2)); *Fonovisa, Inc. v. Does 1-9,2008* U.S. Dist. LEXIS 27170,2008 WL 919701 (finding joinder improper because of the different factual contexts of the alleged infringement for each Defendant and absent a showing of any evidence showing joint action by Defendants, other than their use of the same P2P network to access copyrighted recordings; *Hard Drive Productions, Inc. v. Does 1-188,2011* U.S. Dist. LEXIS 94319 (holding joinder of Doe defendants improper based on alleged use of Bit Torrent Protocols); *Diabolic Video Productions v. Does 1-2.099,* U.S. Dist. LEXIS 58351, 10 (Grewal, M.J.) (N.D. Cal. May 31, 2011) (finding that the nature of the Bit Torrent protocol does not make joinder appropriate where Defendants allegedly used Bit Torrent to infringe copyrighted works. *10 Group v. Does 1-19,2010* U.S. Dist. LEXIS 133717, *8-9 (N.D. Cal. Dec. 7, 201 0) (holding that the "only factual allegations connecting the Defendants"- the allegation that they all used the same peer-to-peer network to reproduce and distribute the Plaintiff's copyrighted work was insufficient for joinder of multiple Defendants under Rule 20); *Group v. Does 1-435,2011* U.S. Dist. LEXIS 14123, *15-16 (N.D. Cal. Feb. 3, 2011); *Lightspeedv. Does 1-1,000,2011* U.S. Dist. LEXIS 35392 (N.D. Ill. Mar. 31,2011 (Plaintiff alleged that the Defendants illegally reproduced and distributed its copyrighted works over the internet through Bit Torrent, the court severed Defendants because of improper joinder); *Boy Racer v. Does 1-71,*

2011 U.S. Dist. LEXIS 58345 (Grewal, M.J.) (N.D. Cal. May 31, 2011) (same).  Although

Congress may have contemplated individual suits against file sharers when considering

legislative solutions to copyright infringement, they certainly did not intend for large-scale file

sharing suits against individual users for alleged acts that may be grouped together using

broadly construed joinder rules.

In a recent March 2012 ruling involving Bit Torrent cases and multiple joined John

Doe Defendants, a U.S. District Judge in Michigan granted Defendant's motion to quash on

the grounds that an allegation of Bit Torrent use does not comport with the Rule 20(a) joinder

requirements and that the Defendants were improperly joined as a matter of law. *Patrick

Collins, Inc. v. John Does 1-23,* No. 2:11-cv-15231 (E.D. Michigan, Mar. 26, 2012) Dkt 8.

Similar to the present facts, the case in question involved a number of John Doe Defendants,

four different ISPs, and nearly three months of allegedly infringing activity.  The court

disagreed with Plaintiff's claims that the joinder issue should be addressed after the ISPs

provide to Plaintiffs the Doe Defendants' identifying information, instead following the

approach used by the Court *in Arista Records, LLC v. Does 1-11,* No. 1:07-cv-2828, 2008

U.S. Dist. LEXIS 90183, *12 (N.D. Ohio, Nov. 3, 2008).  While Arista Records involves

alleged copyright infringement utilizing P2P protocols prior to the advent of Bit Torrent, this

does not change the analysis.

Rule 21 of the Federal Rules of Civil Procedure provides that a court, on motion or on

its own, may "at any time, on just terms, add or drop a party" or "sever any claim against a

party." Fed. R. Civ. P. 21.  As the court finds that the Doe Defendants have been improperly

joined, allowing Plaintiff to proceed with its lawsuit until the Doe Defendants have been

identified will pervert the joinder rules. *Arista Records, LLC,* 2008 U.S. Dist. LEXIS, at *15.

"Postponing a decision on joinder in lawsuits similar to this action results in lost revenue of

perhaps millions of dollars and only encourages Plaintiffs and other member of the [Recording

Association of America] to join (or misjoin) as many Doe Defendants as possible." (citing

*Sony BMG Music Entm 'tv. Does 1-5,* No. 07-cv-02434 (C.D. Cal., Aug. 29, 2007)).

Finally, U.S. District Judge Murray Snow for the District Court for the District of

Arizona held in an almost exactly similar matter on March 19, 2012 that in order to be sued

with other John Doe Defendants in Bit Torrent download cases, the individual must have

either uploaded or downloaded from the other defendants in order for the first element to be

met.

> Plaintiff alleges that the two remaining Defendants "participat[ed] in the
> BitTorrent swarm with other infringers" but does not claim that John Doe 6
> provided data to the former John Doe 12 or vice versa. (Doc. 26 56)...
> Plaintiff has not demonstrated that John Doe 6 and the former John Doe 1'2
> engaged in a single transaction or occurrence, or a single series of
> transactions or occurrences. Defendant John Doe 6 has been improperly
> joined, and is severed from the lawsuit. *Patrick Collins, Inc. v. John Does 1-
> 54* (Case No. 2:12-cv-01602).

Despite Plaintiffs claims to the contrary, Doe 11 and Defendants otherwise 1-31

herein did not participate in the same transaction or occurrence, the same series of

transactions or occurrences as required by the joinder; nor, did they act in concert with one

another.  The fact that any of the Doe Defendants may have clicked on a command to

participate in the Bit Torrent network does not mean that, each, together, was part of the

downloading swarm of hundreds or thousands of individuals.  Moreover, even if it were true

that all Doe Defendants participate in what Plaintiff describes as a "swarm," it cannot be

stated with certainty that each Defendant was physically present at the same day and time.

12

To the contrary, Plaintiffs own exhibit attached to the Complaint indicates that downloading occurred at different times and dates within an eight week range between May 17,2012 and July 21, 2012, an almost eight week period wherein the Plaintiffs allege that Defendants were acting in concert.  No statement or pleading is made as to which Doe Defendant or Defendants Doe #11 shared with or conspired with to allegedly infringe Plaintiff's work.  Given that Plaintiff has failed to provide an explanation as to how each party is sharing in concert with one another, Plaintiff's Complaint is hardly sufficient to demonstrate the sufficiency of the joinder requirements of F.R.C.P.  Plaintiff has not demonstrated in any way that Defendant John Doe #11 was accessing the alleged Bit Torrent tracker at the same time and transaction as the other Defendants nor have they demonstrated for how long that John Doe #11 was accessing the files if at all.

Plaintiff fails to show that the claims against each Doe Defendant arose out of the same transaction, occurrence, or series of transactions or occurrences, and therefore, Defendants must be severed and dismissed.

## II.   <u>PLAINTIFF'S SUBPOENA MUST BE QUASHED</u>

### A. **Defendant has Standing to Challenge the Subpoena Because Defendant Has a Personal Interest in the Subpoenaed Matter**

A party has standing to challenge a subpoena issued to a third party when the party has a personal or proprietary interest in the information sought by the subpoena.  *See Washington v. Thurgood Marshall Acad.,* 230 F.R.D. 18, 21 (Dist. D.C., 2005).  Here, because the subpoena issued to Comeasseeks Defendant's personally identifYing information, Defendant undoubtedly has a "personal interest" in the information sought by

13

the subpoena.  Further, if Defendant's name is turned over by Comcast, Plaintiff, as part of

their business model will quickly seek several settlements that amount to thousands of

dollars each, with no serious intention of naming any Defendants.  If an identified Doe has

a "personal or proprietary interest" sufficient to pay several thousand dollars under the

threat of litigation and public exposure, certainly Defendant has a "personal or proprietary

interest" sufficient to object prior to that disclosure.  Accordingly, Defendant has standing

to challenge the subpoena.

B. Plaintiff's Subpoena Must be Quashed on the Basis of the Lack of
   Reliability relating to IP Address and MAC Address Tracking
   Technology

Plaintiffs subpoena must be quashed because the technology used to identify individual

Defendants for the alleged copyright infringement is unreliable and is insufficient to show a

volitional act of copyright infringement.  Specifically, there is not only software available

that is capable of impersonating and/or falsifying an IP address, but such software is

unreliable because the software does not also identify the associated computer's MAC

address at the time.  An IP address can name an entire network of computers, so without the

MAC address, an IP address alone is not sufficient to identify an individual accused of

copyright infringement.  Further, most ISPs do not store MAC address data nor do they have

the ability to detect falsified or altered MAC addresses.  Because the technology used by

Plaintiff to identify the various John Doe Defendants is highly unreliable, Plaintiff is

incapable of accurately identifying the proper individuals who actually downloaded the

infringing material, and from where the material was actually downloaded.  Because IP

addresses are the only evidence Plaintiff has to identify Doe Defendants, Plaintiff's

subpoena is unreliable on its face and should be quashed by the Court given the evidence Plaintiff has provided thus far.

Moreover, to prove a claim for infringement, a Plaintiff must demonstrate that the Defendant copied the protected work. *Kelly v. Ariba Soft Corp.,* 336 F.3d 811, 817 (9'• Cir. 2003) ("the Plaintiff must show ownership of the copyright and copying by the Defendant."), and that the copying was a result of a volitional act. *See Religious Tech Ctr. v. Netcom On-Line Commn'n Servs., Inc.,* 907 F. Supp 1361, 1369-1370 (N.D. Cal. 1995). However, Plaintiff's allegations are highly suspect and do not, and cannot account for numerous issues, including unsecured wireless networks, fraudulently broadcasted IP addresses, computer hacking, and more. Courts again have touched on this simple yet very logical assertion, that an IP address does not necessarily constitute a copyright infringer. Again, the *VPR* Court correctly identified this factual and legal point, observing that:

> "[Plaintiff] ignores the fact that IP subscribers are not necessarily copyright infringers. Carolyn Thompson writes in an MSNBC article of a raid by federal agents on a home that was linked to downloaded child pornography. The identity and location of the subscriber were provided by the ISP. The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid.
> Federal agents returned the equipment after determining that no one at the home had downloaded the illegal material. Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi- Fi connections (including a secure connection from the State University New York)." *VPR Internationale* v. *Does 1-1,017,* No. 2:11-cv-02068, (C.D. Ill. Apr. 29, 2011), Dkt. 15,2011 U.S. Dist. LEXIS 64656, at 3-4.

However, as noted by Judge Baker, "whether you're guilty or not, you look like a suspect."

The complaints assert that the Defendant – identified only by IP address – was the individual who downloaded the subject "work" and participated in the BitTorrent swarm. However, the assumption that the person who pays for Internet access at a given location is

15

the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time. an IP address provides only the location at which one of any number of computer devices may be deployed; much like a telephone number can be used for any number of telephones.  As one introductory guide states:

> If you only connect one computer to the Internet, that computer can use the address from your ISP.  Many homes today, though, use routers to share a single Internet connection between multiple computers.   Wireless routers have become especially popular in recent years, avoiding the need to run network cables between rooms.  If you use a router to share an Internet connection, the router gets the IP address issued directly from the ISP. Then, it creates and manages a subnet for all the computers connected to that router.

Thus, it is no more likely that the subscriber to an IP address carried out a particular computer function-here the purported illegal downloading of a single pornographic film — than to say an individual who pays the telephone bill made a specific telephone call.

Indeed, due to the increasingly popularity of wireless routers, it much less likely. While a decade ago, home wireless networks were nearly non-existent, 61% of US homes now have wireless access, which is the case in the Defendant's home.  As a result, a single IP address usually supports multiple computer devices-which unlike traditional telephones can be operated simultaneously by different individuals. See U.S. v. Latham, 2007 WL 4563459, (D.Nev. Dec. 18, 2007).  Different family members, or even visitors, could have performed the alleged downloads.  Unless the wireless router has been appropriately secured (and in some cases, even if it has been secured), neighbors or passersby could access the Internet using the IP address assigned to a particular subscriber and download the plaintiff's film.  In order to allow multiple computers to access the internet under the same IP address, the cable modem may be connected to a router, or may itself function as a router, which serves as a

gateway through which multiple computers could access the internet at the same time under the same IP address.  The router could be a wireless device in which case, computers located within 300 feet of the wireless router signal could access the internet through the router and modem under the same IP address.  The wireless router signal strength could be increased beyond 600 feet if additional devices are added.  The only way to prevent sharing of the wireless router is to encrypt the signal and even then an individual can bypass this security using publicly available software.

These developments cast doubt on plaintiffs' assertions that "the ISP to which each Defendant subscribes can correlate the Defendant's IP address to the Defendant's true identity." As one judge observed:

> The Court is concerned about the possibility that many of the names and
> addresses produced in response to Plaintiff's discovery request will not in
> fact be those of the individuals who downloaded "[Plaintiff's movie title]."
> The risk is not purely speculative; Plaintiff's counsel estimated that 30% of
> the names turned over by ISPs are not those of individuals who actually
> downloaded or shared copyrighted material.  Counsel stated that the true
> offender is often the "teenaged son ... or the boyfriend if it's a lady."
> Alternatively, the perpetrator might turn out to be a neighbor in an apartment
> building that uses shared IP addresses or a dormitory that uses shared
> wireless networks.  This risk of false positives gives
> rise to the potential for coercing unjust settlements from innocent defendants
> such as individuals who want to avoid the embarrassment of having their
> names publicly associated with allegations of illegally downloading
> "[Plaintiff's movie title]."

Digital Sin, Inc. v. Does 1-176,-- F.R.D. --,2012 WL 263491 (S.D.N.Y. Jan. 30, 2012).

Another court noted:

> the ISP subscriber to whom a certain IP address was assigned may not be the
> same person who used the Internet connection for illicit purposes ... By
> defining Doe Defendants as ISP subscribers who were assigned certain IP

addresses, instead of the actual Internet users who allegedly engaged in infringing activity, Plaintiff's sought-after discovery has the potential to draw numerous innocent internet users into the litigation, placing a burden upon them that weighs against allowing the discovery as designed.SBO Pictures, Inc. v. Does 1-3036,2011 WL 6002620, (N.D.Cal. Nov. 30, 2011).

In sum, although the complaints state that IP addresses are assigned to "devices" and thus by discovering the individual associated with that IP address will reveal "defendants' true identity," this is unlikely to be the case. Most, if not all, of the IP addresses will actually reflect a wireless router or other networking device, meaning that while the ISPs will provide the name of its subscriber, the alleged infringer could be the subscriber, a member of his or her family, an employee, invitee, neighbor or interloper.

Coupled with the devastating effect of a false accusation of infringement of pornographic materials, Plaintiffs allegations fail to provide sufficient accuracy, nor an actual volitional act associated to a Defendant sufficient to support its claim, and Plaintiff's subpoena should be quashed.

### C. The Subpoena Should be Quashed to Protect Defendant from Unreasonable Annoyance and Undue Burden

The Court must quash the present subpoena against John Doe #11 to prevent Defendant from suffering unwarranted annoyance and an undue burden. Fed. R. Civ. Pro.45(c)(3)(A)(iv). Presently, Plaintiff requires Defendant's confidential personally identifying information from Defendant's ISP so that Plaintiff can harass Defendant into coercing a quick and profitable settlement under the guise of publicly outing Defendant regarding an accusation of an unlawful download of digital material, despite questionable proof against Defendant. Plaintiff's subpoena is intended to cause an undue annoyance and hardship to Defendant, and the same would result if Defendant's personally identifying

18

information were associated without sufficient evidentiary support of the unlawful downloading of the digital materials. By quashing Plaintiffs subpoena, the Court can prevent the injustice of having Defendant unjustly harmed by questionable accusations of illegally downloading digital materials. Given the present facts, the subpoena should be quashed.

## CONCLUSION

The copyright infringement of protected works, such as Plaintiffs, is a problem and the owners have the right to seek redress for it. Plaintiffs misuse of the court in seeking redress stems from the weak *prima fascia* evidence collected (public IP address) coupled with abusive settlement practices. Plaintiffs commonly set the settlement fee at the point where it costs defendants more to fight than settle, regardless of guilt or innocence. The threat of possible financial ruin, family and friend embarrassment, a convenient settlement option, and non- disclosure agreement, make it easy for even innocent people to possibly accept paying the settlement fee. Plaintiff knows their evidence collections methods are far from 100% effective at identifying the actual infringers. To admit this short coming risks the profitability of this business model and future operations. The fact that a majority of Federal civil cases are settled before trial should not be the justification basis for allowing this activity to continue. Plaintiff and the growing number of copyright infringement lawyers are abusing the court for their financial gain.

THEREFORE, Defendant respectfully requests that the Court enter an Order quashing the August 9, 2012 *subpoena duces tecum* issued to Comcast as applied to John

Doe Defendant #11. Further, Defendant requests that the Court enter an Order to sever and/or dismiss John Doe# 11 from Civil Action No. 1:12--cv-02069-WYD-WEH.

**DATED:** September 21,2012

By:

John Doe No. 11

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2012, a true and correct copy of the foregoing DEFENDANT JOHN DOE #11'S MOTION TO DISMISS AND/OR SEVER COMPLAINT AGAINST DEFENDANT AND QUASH THE SUBPOENA AGAINST THE SAME, WITH MEMORANDUM OF POINTS AND AUTHORITIES was sent via first-class mail or via the CM/ECF filing system to the following:

JASON AARON
KOTZKER KOTZKER
LAW GROUP
9609 South University Boulevard
Highlands Ranch, CO 80163

**DATED:** September 21,2012

By

John Doe No.11